UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **KATIE WAIDMANN**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**ADVANCED RADIOLOGY IMAGING ASSOCIATES, LLC**, a Florida limited liability company, **MI MEDICAL SPA, LLC**, a Florida limited liability company, and **DR. SAURIN J. SHAH**, an individual,<br><br>Defendants. | CIVIL ACTION<br><br>Case No. 2:20-cv-162<br><br>Judge:<br><br>Mag. Judge: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**NOW COMES** the Plaintiff, **KATIE WAIDMANN** ("**WAIDMANN**" or "Plaintiff") by and through undersigned counsel, and states the following for her Complaint:

**CAUSES OF ACTION**

1. This is an action brought under the Fair Labor Standards Act (FLSA) and Florida common law for (1) unpaid overtime, (2) assault, (3) battery, (4) invasion of privacy, (5) intentional infliction of emotional distress, and (6) false imprisonment.

**PARTIES**

2. The Plaintiff, **KATIE WAIDMANN** ("**WAIDMANN**") is an individual and a resident of Florida who currently resides in Lee County, Florida, and who performed services for the Defendants in Lee County, Florida. The Defendants paid **WAIDMANN** on an hourly basis and thus she was a non-exempt employee. At all times, she had enterprise and individual coverage under the FLSA during her employment with the Defendants. At all material times, **WAIDMANN**

1

was employed by the Defendants as an office manager. **WAIDMANN**'s duties consisted of general management of Defendants' staff and business. A great number of Defendants' patients were residents of other states who visit Southwest Florida on only a seasonal basis or on vacation. **WAIDMANN** began the flow of interstate commerce for the Defendants by, *inter alia*, generating interstate billing, which collected funds from out-of-state sources, including federal funds from Medicare. **WAIDMANN** was an employee within the contemplation of 29 U.S.C. 203(e)(1). Thus, pursuant to 28 U.S.C. 1391(b), venue for this action lies in the Middle District of Florida.

3. The Defendant, **ADVANCED RADIOLOGY IMAGING ASSOCIATES, LLC** ("**CLINIC**") is a Florida limited liability company located in Lee County, Florida and employs greater than 15 employees. **CLINIC** consists of two professional offices and has gross annual sales well in excess of $500,000.00 per year and is engaged in interstate commerce. **CLINIC**'s employees are engaged in interstate commerce and their business model specifically caters to persons traveling interstate, such as seasonal "snow birds." Additionally, **CLINIC** communicates with patients' hometown physician out-of-state, providing all the records and information patients need when they return home. **CLINIC** collects monies all kinds of insurance, most of which is from out-of-state sources, including the receipt of federal monies from Medicare reimbursement. **CLINIC** has the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like **WAIDMANN**. **CLINIC** supervised and controlled **WAIDMANN**'s work schedules and conditions of employment, in addition to determining the rate and method of payment for **WAIDMANN**. **CLINIC** maintains employment records of **WAIDMANN**. **CLINIC** was the employer of **WAIDMANN**.

4. The Defendant, **MI MEDICAL SPA, LLC** ("**SPA**") is a Florida limited liability company located in Lee County, Florida and is an integrated business of **CLINIC** that is

2

essentially one and the same. **SPA** and **CLINIC** share common ownership, share staff, share office space. **SPA** consists of two professional offices and has gross annual sales in excess of $500,000.00 per year and is engaged in interstate commerce. **SPA**'s employees are engaged in interstate commerce and their business model specifically caters to persons traveling interstate, such as seasonal "snow birds." Additionally, **SPA** communicates with patients' hometown physician out-of-state, providing all the records and information patients need when they return home. **SPA** collects monies all kinds of insurance, most of which is from out-of-state sources. **SPA** has the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like **WAIDMANN**. **SPA** supervised and controlled **WAIDMANN**'s work schedules and conditions of employment, in addition to determining the rate and method of payment for **WAIDMANN**. **SPA** maintains employment records of **WAIDMANN**. **SPA** was the employer of **WAIDMANN**.

5. Defendant **DR. SAURIN J. SHAH** ("**SHAH**") is the owner and managing director of **CLINIC and SPA** and is domiciled in Lee County, Florida. **SHAH** is a covered employer under the FLSA (29 U.S.C. §203(d), (r) and (s)). **SHAH** had the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like **WAIDMANN**. **SHAH** supervised and controlled **WAIDMANN**'s work schedules and conditions of employment, in addition to determining the rate and method of payment for **WAIDMANN**. **SHAH** maintains employment records of **WAIDMANN**. **SHAH** was the employer of **WAIDMANN**.

6. At all times relevant to the instant action, the Defendants were **WAIDMANN**'s employer within the meaning of the FLSA.

## JURISDICTION AND VENUE

7. This Court has jurisdiction of this matter under 28 U.S.C. §1331.

8. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

9. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff resides in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiffs' claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since the action accrued in Lee County, which is within the Fort Myers Division.

## GENERAL ALLEGATIONS

10. **WAIDMANN** was employed by the Defendants from approximately Nov. 2014 to early May 2019.

11. **WAIDMANN** always performed her assigned duties in a professional manner and am very well qualified for her position.

**FLSA Allegations**

12. **WAIDMANN** was a manager but was most recently paid at a rate of $28.00 per hour.

13. Nearly each and every week of her employment, **WAIDMANN** worked well in excess of 40 hours but did not receive her lawful overtime compensation.

14. **WAIDMANN**'s regular daily duties included often began prior to or around 7:00 A.M. and could, and would, often end as late as 12:00 A.M. or later, and frequently included work on weekends and holidays.

15. The Defendants demanded that **WAIDMANN** be available between those hours and **WAIDMANN** did work for the Defendants during that time.

16. The Defendants compensated **WAIDMANN** on strictly an hourly basis as is evidenced by her biweekly pay records, which reflect that **WAIDMANN** was not paid a fixed sum or fee. For example, when **WAIDMANN** did not work 80 hours biweekly, her pay reflects an hourly rate of $28.00 per hour multiplied by her hours worked rather than a fixed salary. **WAIDMANN**'s hourly rate was $28.00 per hour, and **WAIDMANN** only received pay for the hours she actually worked.

17. Because the Defendants paid **WAIDMANN** on an hourly basis rather than on a salary basis, **WAIDMANN** was a non-exempt employee.

18. **WAIDMANN** was required by the Defendants to work at least 55-hours per week for almost each week of her employment (except during scheduled vacations), but the Defendants failed to pay **WAIDMANN** overtime wages at time and a half.

19. The Defendants failed to act in good faith under the reasonable belief they had complied with the FLSA.

20. **WAIDMANN** is entitled to liquidated damages because the Defendants acted willfully or with at least a reckless disregard as to the legality of its pay practices in regard to **WAIDMANN**.

21. **WAIDMANN** notified the Defendants, who refused to remit payment for the overtime claimed herein.

22. The Defendants have violated the FLSA by failing to pay overtime wages to **WAIDMANN**.

**Common Law Claims**

23. **WAIDMANN** has been the victim of sexual abuse and violence by **SHAH**, which began in 2008 and which has continued right up until May 2019.

24. During **WAIDMANN**'s first period of employment, she initially consensually engaged in a sexual relationship with **SHAH**, who was married.

25. **WAIDMANN** then became pregnant with **SHAH**'s child in or about 2009 and, in order to continue her personal <u>and</u> professional relationship with him, **SHAH** demanded **WAIDMANN** get an abortion.

26. When **WAIDMANN** initially refused, **SHAH** himself, a radiologist, attempted to perform an abortion but failed so badly that the pregnancy was not terminated and **WAIDMANN** awoke in a pool of blood at home.

27. Thereafter, **WAIDMANN** was forced to seek an abortion at a regular clinic, which again she did not want to do.

28. **SHAH** then began prescribing **WAIDMANN** pain killers, which he got **WAIDMANN** addicted to in order gain control over her.

29. **WAIDMANN** finally summoned the courage to leave his employment in 2011.

30. But in or about Summer 2014, **SHAH** (now divorced) contacted **WAIDMANN** and persuaded her to resume working at his radiology practice.

31. In order to convince **WAIDMANN** to return, he promised that everything would be different and that her employment would be strictly professional.

32. **WAIDMANN resumed working for Defendants on or about November 2014.**

33. However, roughly one year into **WAIDMANN**'s second period of employment, **SHAH** again began demanding sexual contact in order for **WAIDMANN** to keep her job.

34. **WAIDMANN** did not want to lose her job, a fact **SHAH** knew and reminded her of.

35. In the 4-years preceding this action, this included forced sexual contact in the office, with or without patients and other office staff present.

36. In the 4-years preceding this action, **SHAH** also would physically lead the unwilling **WAIDMANN** into the office bathroom, conference room, reading room, spa, or back office, would lock the door and demand that **WAIDMANN** engage in a sexual contact, using sex toys he had procured and displayed in those rooms.

37. In the 4-years preceding this action, **SHAH** has also surreptitiously taken nude photographs of **WAIDMANN**, which she did not consent to having taken and **SHAH** has refused to delete them or otherwise destroy them.

38. In the 4-years preceding this action and on a regular basis, **SHAH** would put his bare hands under **WAIDMANN** shirt and bra to grab her bare breasts and would also put his bare hands inside **WAIDMANN**'s underwear and digitally penetrate her, all of which was unwanted by **WAIDMANN**.

39. Despite **WAIDMANN**'s objections to having to endure this behavior, he continued to premise **WAIDMANN**'s continued employment on her fulfillment of his sexual wants.

40. When **WAIDMANN** refused to submit to his sexual desires, **SHAH** retaliated by disclosing protected health information to co-workers.

41. Additionally, and knowing he had gotten **WAIDMANN** addicted to prescription medication, **SHAH** would threaten to refuse to issue a refill if **WAIDMANN** did not engage in sexual contact with him.

42. This behavior continued unabated until **WAIDMANN** finally refused, at which point **SHAH** informed **WAIDMANN**, in writing: "I'm wrapping up your employment because you won't be with me."

43. As a result of **SHAH**'s actions described herein, the liability for which also extends to **CLINIC** and **SPA** under *respondeat superior* since **SHAH**'s actions occurred within the scope of his employment, **WAIDMANN** has suffered great mental anguish.

## COUNT I: VIOLATION OF THE FLSA- UNPAID OVERTIME

44. The Plaintiff hereby incorporate Paragraphs 1-22 in this Count as though fully set forth herein.

45. **WAIDMANN** was a covered, non-exempt employee under the FLSA at all times during her employment with the Defendants.

46. The Defendants were required by the FLSA to pay **WAIDMANN** at least time and one-half for all hours worked by **WAIDMANN** in excess of 40 hours per week.

47. The Defendants had operational control over all aspects of **WAIDMANN**'s day-to-day functions during her employment, including compensation.

48. The Defendants were **WAIDMANN**'s "employer" and is liable for violations of the FLSA in this case.

49. The Defendants violated the FLSA by failing to pay **WAIDMANN** at least time and one-half for all hours worked over 40 per week.

50. The Defendants have willfully violated the FLSA in refusing to pay **WAIDMANN** proper overtime for all hours worked over 40 per week.

51. As a result of the foregoing, **WAIDMANN** has suffered damages of lost wages.

52. The Defendants are the proximate cause of **WAIDMANN**'s damages.

**WHEREFORE,** the Plaintiff prays that this Honorable Court enter a Judgment in his favor and against the Defendants for an amount consistent with evidence, together with liquidated damages, the costs of litigation, interest, and reasonable attorneys' fees.

## COUNT II- ASSAULT

53. Plaintiff incorporates by reference Paragraphs 1-14, 7-9, and 23-43 of this Complaint as though fully set forth below.

54. During the course of the Plaintiffs' employment with **CLINIC** and **SPA**, **SHAH**, on several occasions, subjected the Plaintiff to intentional, unlawful offers of corporeal injury to the Plaintiff by force.

55. **SHAH** further caused force to be unlawfully directed toward the person of the Plaintiff, thereby creating the Plaintiff's well-founded fear of imminent peril.

56. The Plaintiff feared imminent peril.

57. **SHAH** possessed the apparent present ability to effectuate the attempt upon the Plaintiff.

58. At no time was **SHAH** acting in self-defense.

59. **SHAH, CLINIC** and **SPA** are the proximate cause of the Plaintiff's damages.

**WHEREFORE**, Plaintiff respectfully demands that this Honorable Court enter its judgment in favor of Plaintiff and against Defendants in an amount consistent with the evidence, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

## COUNT III- BATTERY

60. Plaintiff incorporates by reference Paragraphs 1-14, 7-9, and 23-43 of this Complaint as though fully set forth below.

61. During the course of Plaintiff's employment with **CLINIC** and **SPA**, **SHAH**, on several occasions, caused a harmful or offensive contact to the Plaintiff by unlawful sexual touching and striking.

62. **SHAH** intended to cause such contact and acted with reckless disregard of the consequences of his acts.

63. **SHAH** had no justification for subjecting the Plaintiff to harmful and offensive contact.

64. **SHAH** was not acting in self-defense.

65. **SHAH**, **CLINIC** and **SPA** are the proximate cause of the Plaintiff's damages.

**WHEREFORE**, Plaintiff respectfully demand that this Honorable Court enter its judgment in favor of Plaintiff and against Defendants in an amount consistent with the evidence, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

### COUNT IV: INVASION OF PRIVACY- INTRUSION - SHAH

66. Plaintiff realleges and incorporates Paragraphs 1-14, 7-9, and 23-43 in this Count by reference.

67. **SHAH** did wrongfully intrude upon the physical solitude of **WAIDMANN** and **WAIDMANN**'s private activities.

68. **SHAH**'s intrusion was into a place where **WAIDMANN** had a reasonable expectation of privacy as she was photographed while unclothed in a private space.

69. **SHAH** did take intimate and private photographs of **WAIDMANN**'s naked body without her authorization and to fulfill his sexual desires.

70. At no time did **WAIDMANN** consent to these intimate photographs.

71. **SHAH** intentionally and/or recklessly intruded on the private affairs of **WAIDMANN** and engaged in conduct that would be highly offensive to a reasonable person by surreptitiously taking photographs **WAIDMANN**'s nude body while she was unsuspecting and in a private place.

72. **SHAH**'s intrusion into **WAIDMANN**'s privacy was outrageous and did cause mental suffering, shame and humiliation to **WAIDMANN**.

73. A reasonable person of ordinary sensibilities would find **SHAH**'s intrusion into **WAIDMANN**'s privacy was outrageous and would have caused mental suffering, shame and humiliation to such an ordinary person.

74. This count is timely brought.

**WHEREFORE**, Plaintiff respectfully demand that this Honorable Court enter its judgment in favor of the Plaintiff and against the Defendant in an amount consistent with the evidence, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

### COUNT V- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - SHAH

75. Plaintiff incorporates by reference Paragraphs 1-14, 7-9, and 23-43 of this Complaint as though fully set forth below.

76. **SHAH** did by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to Plaintiff.

77. **SHAH** intentionally and/or recklessly inflicted emotional distress on the Plaintiff by sexually assaulting, sexually battering and sexually harassing her.

78. **SHAH** is subject to liability for such emotional distress.

79. **SHAH** is the proximate cause of Plaintiff's damages.

**WHEREFORE**, Plaintiff respectfully demands that this Honorable Court enter its judgment in favor of Plaintiff and against Defendant in an amount consistent with the evidence, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

## COUNT VI- FALSE IMPRISONMENT - SHAH

80. Plaintiffs incorporate by reference Paragraphs 1-14, 7-9, and 23-43 of this Complaint as though fully set forth below.

81. **SHAH** did intend to confine the Plaintiff.

82. **SHAH** committed multiple acts of confinement on the Plaintiff.

83. **SHAH** did cause the unlawful detention and deprivation of liberty of the Plaintiff against her will.

84. **SHAH** did so without legal authority or color of authority.

85. The Plaintiff was aware of her confinement.

86. **SHAH** actively participated in the restraint of the Plaintiff and such restraint was unreasonable and unwarranted under the circumstances.

87. **SHAH** is subject to liability for such unlawful detention.

88. **SHAH** is the proximate cause of the Plaintiff's damages.

**WHEREFORE**, Plaintiff respectfully demands that this Honorable Court enter its judgment in favor of Plaintiff and against Defendant in an amount consistent with the evidence, together with the costs of this litigation, interest, reasonable attorney's fees, and all other relief as this Court deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: March 11, 2020

**s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
YORMAK EMPLOYMENT &DISABILITY LAW
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com